**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1481**

State of Minnesota,
Appellant,

vs.

Leona Rose deLottinville,
Respondent.

**Filed March 21, 2016
Reversed and remanded
Rodenberg, Judge**

Meeker County District Court
File No. 47-CR-15-317

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brandi L. Schiefelbein, Meeker County Attorney, Samuel P. Weeks, Assistant County Attorney, Litchfield, Minnesota (for appellant)

Matthew J. Mankey, Mankey Law Office, Golden Valley, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Klaphake, Judge.[*]

**S Y L L A B U S**

When police have probable cause to believe that the subject of a valid arrest warrant is present as a short-term social guest at another person's residence, police may enter that residence to effectuate the arrest pursuant to the warrant without violating the Fourth Amendment rights of the person named therein.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**OPINION**

**RODENBERG**, Judge

The state appeals after the district court dismissed its complaint against respondent. It argues that the district court erred in ruling that police officers violated respondent's Fourth Amendment rights when they entered a third-party's residence to arrest respondent under a valid warrant while she was present as a guest.[1] We reverse and remand.

**FACTS**

Respondent Leona Rose deLottinville, who maintained her own permanent residence in a nearby town, had been staying with D.R. intermittently for about one week when two officers of the Drug Task Force came to D.R.'s residence with an arrest warrant for respondent.[2] Respondent had known D.R. for about one month, and they were romantically involved. The parties agree that respondent was a short-term social guest at D.R.'s residence as of March 24, 2015.

D.R. lived in an apartment in the lower level of his parents' residence. Meeker County officers got a tip that respondent might be at D.R.'s residence. On March 24, they knocked on the front door of the upper unit, where they were greeted by D.R.'s mother. D.R.'s mother testified that she did not know whether respondent was present in the house,

---

[1] The district court concluded that respondent was a "guest who had a reasonable expectation of privacy" at D.R.'s residence. We use "guest," "visitor," "and short-term social guest" interchangeably for purposes of this appeal. It is agreed that respondent was more than a mere permittee who had no social connection with the residents in the home. *Cf. Minnesota v. Carter*, 525 U.S. 83, 90-91 (1998).

[2] The allegations underlying the arrest warrant are unrelated to this case. There is no argument that the arrest warrant was deficient or defective in any way.

because D.R. lived in a separate, downstairs unit. The officers, on the other hand, testified that D.R.'s mother told them that respondent was present in the house. One officer walked around the outside of the house to the back door, intending to prevent anyone from fleeing. Meanwhile, D.R. came upstairs into his parents' living unit via an interior staircase and met the other officer inside the front door. At about the same time, the officer who had walked around to the back of the house observed and recognized respondent through a glass patio door through which entry into the lower unit was possible. The officer entered through that unlocked door and arrested respondent.

While arresting respondent, the officer observed marijuana and a bong in plain view on a countertop in the lower unit. Later that day a group of officers, including D.R.'s parole officers, returned to search the residence. Still later that day, the Meeker County Sheriff obtained a search warrant for D.R.'s residence and completed a thorough search, discovering marijuana, methamphetamine, hydrocodone pills, and drug paraphernalia. Respondent and D.R. gave statements that same day, following *Miranda* warnings.

The state charged respondent with three counts related to possession of drugs and paraphernalia: fifth-degree possession of a controlled substance (methamphetamine) and fifth-degree possession of a controlled substance (hydrocodone), both counts under Minn. Stat. § 152.025, subd. 2(a)(1) (2014); and possession of drug paraphernalia, under Minn. Stat. § 152.092 (2014).

Following an omnibus hearing, the district court ruled that respondent "was a guest who had a reasonable expectation of privacy" at D.R.'s residence and that her arrest was illegal. It dismissed all charges with prejudice, reasoning that "[a]ll evidence obtained as

3

a result of her seizure is fruit of the poisonous tree and shall be suppressed." The district court did not rule on respondent's alternative motions challenging probable cause and alleging other improper police conduct. This pretrial appeal by the state followed.

## ISSUE

Did police violate respondent's Fourth Amendment rights when, with the purpose of apprehending her under a valid arrest warrant, they entered a residence where they had probable cause to believe she was present as a visitor?

## ANALYSIS

The state can prevail on appeal from a district court's pretrial ruling only if the ruling is clearly and unequivocally erroneous, and has a critical impact on the state's case. *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998); *see also* Minn. R. Crim. P. 28.04, subd. 1 (1), subd. 2(2)(b). Although the parties have not addressed the threshold critical-impact requirement, we note that the district court's suppression order resulted in the dismissal of the complaint. Therefore, the pretrial order undoubtedly has a critical impact on the likelihood of a successful prosecution. *See State v. Zanter*, 535 N.W.2d 624, 630 (Minn. 1995) (stating that "critical impact has been shown" when an error "significantly reduces the likelihood of a successful prosecution" (quotation omitted)).

The state argues that the district court erroneously concluded that respondent's arrest was illegal and that the consequently discovered incriminating evidence must be suppressed. It argues that the officers properly entered the residence with a valid arrest warrant for the purpose of apprehending respondent, and that the evidence discovered as a

4

result of the entry and arrest is not, on this basis, inadmissible against respondent. We agree.

In reviewing a pretrial order suppressing evidence, we review a district court's findings of fact for clear error and its legal conclusions de novo. *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009).

Our federal and state constitutions guarantee "the right of the people to be secure in their persons, houses, papers, and effects" from "unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. 1, § 10. "It is established that evidence discovered by exploiting previous illegal conduct is inadmissible." *State v. Olson*, 634 N.W.2d 224, 229 (Minn. App. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963)), *review denied* (Minn. Dec. 11, 2001). "Such evidence is considered 'fruit of the poisonous tree,'" and is inadmissible unless the state can show that the subsequently obtained evidence has been "'purged of the primary taint.'" *Id.* (quoting *Wong Sun*, 371 U.S. at 488, 83 S. Ct. at 417).

In *Payton v. New York*, the United States Supreme Court held that a valid arrest warrant justifies entry into the home of the subject of the warrant to effectuate that person's arrest if the police reasonably believed the subject to be present at that time. 445 U.S. 573, 602, 100 S. Ct. 1371, 1388 (1980). *Payton* holds that an arrest warrant justifies entry into a suspect's *own* home, but did not address the situation where the subject of an arrest warrant is found or believed to be present in *another person's* home. *See id.* at 583, 100 S. Ct. at 1378.

5

In its omnibus order, the district court relied primarily on *In re Welfare of B.R.K.*, 658 N.W.2d 565 (Minn. 2003). In *B.R.K.*, the Minnesota Supreme Court held that a short-term social guest has a reasonable expectation of privacy in a host's home for standing purposes to challenge the entry and subsequent warrantless search of the home. *Id.* at 578. The district court concluded that respondent was "a guest who had a reasonable expectation of privacy." But it did not analyze whether respondent had a reasonable expectation of avoiding arrest pursuant to a duly issued warrant for her arrest. Unlike *B.R.K.*, this case is not about entry leading to a warrantless search. This case is about whether entry for the purpose of arresting a visitor pursuant to a valid warrant violated the visitor's reasonable expectation of privacy. The later searches of D.R.'s residence followed the arresting officer's observation of items that were in plain view during respondent's arrest.

The state relies on *State v. Couillard* for the proposition that a brief visitor does not have standing to challenge law enforcement's entry into a home. 641 N.W.2d 298, 300 (Minn. App. 2001), *review denied* (Minn. May 15, 2002). But *Couillard*'s holding addresses the defendant's standing to challenge the search of his personal property located within a home where he was a visitor while that home was subject to a search warrant. Like *B.R.K.*, *Couillard* also sheds no light on the precise issue presented here: whether officers may enter a home to arrest a visitor for whom an arrest warrant has been duly issued.

Respondent relies on *Steagald v. United States*, 451 U.S. 204, 101 S. Ct. 1642 (1981). This reliance is also misplaced. Police entered Steagald's home for the purpose of arresting one Lyons, for whom there was a valid arrest warrant. *Id.* at 206-07, 101 S.

Ct. at 1644-45. Lyons was not found. But during the search of Steagald's home, evidence incriminating Steagald was found. *Id.* The Supreme Court held that the arrest warrant for Lyons did not justify the entry into and search of Steagald's home in consideration of Steagald's Fourth Amendment rights. *Id.* at 205-06, 101 S. Ct. at 1644. Writing for the Court, Justice Marshall's opinion expressly disclaims application of the enunciated rule of law to the subject of the arrest warrant:

> Here, of course, the agents had a warrant—one authorizing the arrest of [] Lyons. However, the Fourth Amendment claim here is not being raised by [] Lyons. Instead, the challenge to the search is asserted *by a person not named in the warrant* who was convicted on the basis of evidence uncovered during a search of his residence for [] Lyons. Thus, the narrow issue before us is whether an arrest warrant—as opposed to a search warrant—is adequate to protect the Fourth Amendment interests of *persons not named in the warrant*, when their homes are searched without their consent and in the absence of exigent circumstances.

*Id.* at 212, 101 S. Ct. at 1647-48 (emphases added). A *search warrant* was what was missing to protect Steagald and his home from an unreasonable search. But the rights of Lyons had already been considered and respected, because a warrant for his arrest had been issued by a magistrate based on a showing of probable cause.

Here, respondent is in the position occupied by Lyons in *Steagald*. It is clear to us that respondent, the person whose arrest was authorized by the warrant, cannot rely on *Steagald*. *Steagald* was strictly limited to the purpose of protecting the Fourth Amendment rights of persons *not* named in the arrest warrant. *Id.* at 212, 101 S. Ct. at 1647-48.[3] And

---

[3] Respondent and the district court also cite *United States v. Risse*, 83 F.3d 212 (8th Cir. 1996). The holding in *Risse* addressed the rights of a third party who was *not named in the*

7

the question of whether D.R.'s rights were violated when police entered the home is not before us. We are concerned here with whether entry into D.R.'s residence to arrest respondent under a valid arrest warrant violated *respondent's* Fourth Amendment rights. It did not.

We are mindful of the Minnesota Supreme Court case, published shortly after *Steagald*, containing language suggesting that *Steagald* may require a search warrant to effectuate the arrest of a visitor or a guest. *State v. Patricelli*, 324 N.W.2d 351, 354 n.2 (Minn. 1982) (stating that "[i]f the residence was not defendant's home for Fourth Amendment purposes, then police would have had to obtain a search warrant to enter the house," but also observing that complaints about entry without a search warrant might only be available to residents of the house). But this language in *Patricelli* is dicta, as it addresses a hypothetical rather than the facts of the case. *See League of Women Voters Minn. v. Ritchie*, 819 N.W.2d 636, 681 (Minn. 2012) (stating that a comment concerning a legal proposition not essential to the case is dicta and is not binding). Critically, *Patricelli* concerned an invalid arrest warrant. Because of a defect, "there was no warrant." *Patricelli*, 324 N.W.2d at 352. Here, there is no challenge to the validity of the warrant for respondent's arrest, and a police officer saw respondent through a glass patio door, knowing her to be the person named in the arrest warrant.

---

*arrest warrant* but whose home was searched as a result of the arrest of a person named in an arrest warrant who was present in Risse's home. *Id.* at 215-16. Moreover, the person named in the arrest warrant in *Risse* was a co-resident of Risse's home and was not a guest or visitor. *Id.* at 216-17.

We are left, then, with no direct and binding authority concerning whether police may enter a residence to effectuate an arrest, pursuant to a valid arrest warrant, of a visitor known to be present in the residence without violating the Fourth Amendment rights of the person named in the warrant.

The district court found as a fact that one officer "saw the Defendant through the patio door." This finding is supported by the record. Given this factual finding, we are persuaded by the reasoning of the Eighth Circuit Court of Appeals, distinguishing *Steagald* and addressing the precise question presented here. *See United States v. Clifford*, 664 F.2d 1090, 1092 (8th Cir. 1981).

In *Clifford*, the subject of an arrest warrant was arrested while present in someone else's home as a visitor. *Id.* at 1092-93. Officers saw and recognized the subject, Clifford, through a window and entered to arrest him. *Id.* at 1093 n.7. The facts and legal issues in *Clifford* are strikingly similar to those in the present case. Inserting the names of the parties in this case into the Eighth Circuit's opinion in *Clifford*:

> [U]nlike *Steagald*, the Government has prosecuted [deLottinville], the subject of the arrest warrant. . . . Unless [deLottinville] can establish that [she], like Steagald, had a legitimate expectation of privacy in the premises at the time of the arrest, *Steagald* provides no basis for [her] challenge to the police entry.
> Even assuming, however, that [deLottinville] had the requisite privacy interest, [she] still could not successfully challenge the police entry in this case. In *Payton v. New York*, the Supreme Court indicated that an *arrest warrant* will authorize police entry into the arrestee's dwelling. . . .
> If police had possessed an arrest warrant for [D.R.] and reasonably believed that [D.R.] was within the premises, those officers could have legally entered [his] home to arrest [him]. No additional search warrant would have been required.

9

> [DeLottinville] hardly can claim greater rights in [D.R.]'s home than [D.R.] [himself] possessed. Therefore, assuming [deLottinville] could assert a legitimate privacy interest in [D.R.]'s home, the arrest warrant for [deLottinville] and the officers' knowledge of [her] presence in the home justified their entry and subsequent search of [deLottinville] incident to the arrest.
>
> Thus, whether or not [deLottinville] enjoyed a legitimate expectation of privacy in [D.R.'s] home is not crucial here. If [deLottinville] did not have a legitimate expectation of privacy, [her] rights were not violated. If, on the other hand, [deLottinville] had a legitimate expectation of privacy in the premises, *Payton* authorizes entry on the basis of the existing arrest warrant for [deLottinville] and probable cause to believe that [she] was within the premises.

*Id.* at 1092-93 (footnotes omitted) (citing *Payton*, 445 U.S. at 602-03, 100 S. Ct. at 1388).

We adopt the Eighth Circuit's reasoning in *Clifford* and hold that, when police have probable cause to believe that the subject of a valid arrest warrant is present as a visitor in the residence of another, police may enter that residence to effectuate the arrest under that warrant without violating the Fourth Amendment rights of the person named therein. Whether such entry violates the Fourth Amendment rights of any other person is not now before us. Under *Payton* and *Clifford*, respondent's rights were not violated by the police entry into D.R.'s home to arrest her.

## D E C I S I O N

When police, acting pursuant to a valid arrest warrant, have probable cause to believe that the subject of the warrant is present in the residence of another person, the police may enter the residence to arrest the subject of the warrant without violating the Fourth Amendment rights of the arrestee. Evidence discovered as a result of the entry is not, on the basis of the Fourth Amendment, inadmissible against the subject of the arrest

10

warrant. We therefore reverse the district court's suppression order and its order dismissing the complaint against respondent. We remand for further proceedings as appropriate.[4]

**Reversed and remanded.**

---

[4] The district court did not reach respondent's alternative motions. Questions concerning these alternative bases for pretrial relief are not before us. We also note that respondent argues for the first time on appeal that the police officer was improperly present on the curtilage at the time he observed her through the back patio door. This argument was not raised to the district court. We therefore do not address it here. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (declining to address an alternative theory raised for the first time on appeal).